## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

(1)     TA'VION MURPHY,

       Plaintiff,

v.

Case No. CIV-22-525-SLP

(1)     BOARD OF TRUSTEES FOR THE OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY and

(2)     DETENTION OFFICER DOMINIQUE THOMAS,

(3)     BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY

       Defendants.

## COMPLAINT

COMES NOW the Plaintiff, Ta'Vion Murphy, for his causes of action against Defendants Board of Trustees for the Oklahoma County Criminal Justice Authority (Jail Trust), Detention Officer Dominique Thomas (Thomas) and Board of County Commissioners for Oklahoma County (BOCC) alleges and states as follows:

### THE PARTIES

1.     Plaintiff Ta'Vion Murphy is a resident of the State of Oklahoma but was incarcerated at the Oklahoma County Detention Center (OCDC) at the time of the incident hereinafter described.

2.     Defendant Thomas was, at all times relevant hereto, a detention officer employed by and working for the Jail Trust and/or the BOCC.

3.     Defendant Thomas engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant BOCC and/or Defendant Jail Trust.

4.     At the time of the incident, the Jail Trust had final policy-making authority to establish policies, procedures, practices and customs at the OCDC, including but not limited to the training of detention officers and establishing operating and maintenance policies and procedures in the OCDC.

5.     The Jail Trust is engaged in conduct complained of under color of law within the scope of their authority as the Jail Trust.

6.     Defendant BOCC is the entity charged with the additional administration of county governmental services in Oklahoma County, including but not limited to the OCDC.

7.     At the time of the incident, BOCC had final policy-making authority to establish funding and/or oversight regarding the operations, maintenance and staffing of the OCDC.

8.     The policies, practices and customs, promulgated, created, implemented and/or utilized regarding inmate movement by Defendant Thomas, represent the official policies and/or customs of the OCDC.

**JURISDICTION AND VENUE**

Plaintiff incorporates all previous allegations and statements and further alleges the following:

9. This action arises from an incident that occurred in Oklahoma County, Oklahoma.

10. At all material times mentioned herein, Thomas was acting within the scope of his employment and/or authority as an employee/agent of the Jail Trust.

11. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the parties hereto, jurisdiction over the subject-matter hereof, and venue is proper.

**FACTUAL BACKGROUND**

Plaintiff incorporates all previous allegations and statements and further alleges the following:

12. This action arises from an incident that occurred on or about October 10, 2021 at the OCDC.

13. Since its construction in 1991, the OCDC has been riddled with problems. Many of those issues, including but not limited to overcrowding, under staffing, inadequate security and supervision, wide-spread unreasonable use of force by staff, inadequate access to medical care, and deficient housing, sanitation and environmental protections continue to threaten the health and well-bing of inmates confined there today.

14. On July 31, 2008, the United States Department of Justice, Civil Rights

Division, (DOJ) concluded a more than five year investigation into the OCDC to "ensure that conditions at the Jail meet federal constitutional requirements." (U.S. DOJ, Re: Investigation of the Oklahoma County Jail and Jail Annex, Oklahoma City, Oklahoma, July 31, 2008, p. 1)(hereinafter "DOJ Report).

15.    The report summarized the conclusions of the DOJ as follows:

Having completed the fact-finding portion of our investigation, we conclude that certain conditions at the Jail violate the constitutional rights of detainees confined there. As detailed below, we find that the Jail fails to provide for detainees': (1) reasonable protection from harm; (2) constitutionally required mental health services; (3) adequate housing, sanitation and environmental protections; and (4) protection from serious fire-safety risks.

(DOJ Report, p. 2)

16.    As used in the DOJ report, the term "detainees" includes both pre-trial detainees and post-adjudication inmates. (See, DOJ Report, Fn. 2)/

17.    The DOJ report analyzed conditions at the OCDC in light of Fourteenth and Eighth Amendment standards (DOJ Report, p. 3)

18.    A copy of this DOJ Report was sent to Defendant BOCC or Jail Trust, in their official capacity by sending it to John Whetsel, Oklahoma County Sheriff in 2008, as well as the Oklahoma County District Attorney and the United States Attorney for the Western District. As such, Defendants BOCC and Jail Trust were on notice and aware of the constitutional deficiencies addressed by the DOJ Report.

19.    In a section of the DOJ Report entitled "Constitutional Deficiencies," the DOJ

4

made Defendants BOCC and Jail Trust aware prior to May 2019 that the facility "does not have sufficient bed space for this size of population." (DOJ Report, p. 4: "We found detainees sleeping on the floor and three or four detainees locked into two-man cells. The detainees spend nearly 24-hours per day in these cramped quarters.")

20.     Defendants BOCC and Jail Trust were aware prior to October 2021 that "the excessive number of detainees in close quarters contributes to issues such as increased violence among detainees and the grossly unsanitary condition of the cells." (DOJ Report, fn. 4).

21.     The shortage of staff at the jail has contributed to a lack of control over the prisoners at the OCDC.

22.     Since 2008, the Department of Justice has been identifying deficiencies at the OCDC including:

        a.     Over capacity.

        b.     Physical layout of the facility prohibits adequate sight and sound supervision.

        c.     There is an inordinately high risk of detainee-on-detainee violence due to inability to properly supervise.

        d.     Inadequate staffing numbers.

23.     In 2012, the DOJ cited that the OCDC was still short-staffed and that detainee-on-detainee violence was still excessive due to overcrowding.

5

24.    The Jail Trust hired consultant David Parker to provide recommendations to address the deficiencies and issues that were widely known at the jail.

25.    Consultant Parker's report outlined the following:

      a.    Outdated training and policies and procedures.

      b.    Staff consensus is that "every issue that transpires in the jail can be traced to staff shortages."

      c.    Staff is not trained to detect and/or intervene in inmate incidents appropriately.

26.    In May 2021, the National Institute of Corrections provided a report to the BOCC and Jail Trust stating the following:

      a.    There is an incomplete staffing plan.

      b.    New hires receive limited training.

      c.    "Clear and convincing present level of staffing was insufficient for a safe and secure jail."

      d.    The jail had started to implement even same-day hirings and failed to perform even background checks on new hirees.

      e.    The jail reduced hiring requirements.

      f.    "Impossible to effectively manage inmate population when they are so short-staffed."

      g.    Officers are coming to work without proper training.

h.   In-service training is out of date.

I.   Unorganized hiring, interview and background checks of new hires.

j.   A lack of policies and procedures posted.

k.   Informed the Jail Trust that they need to change to direct supervision as soon as possible to curb adverse events.

27.   The Jail Trust and BOCC have had ample opportunity to increase funding which would allow them to properly staff and address the issues that consultants continually identify in their reviews of the OCDC.

28.   The Jail Trust was created to address these issues, but has failed to implement any effective actions to address the short staffing and untrained staff members.

29.   The BOCC has failed to provide appropriate oversight and funding for the facility as well.

30.   Defendant BOCC entered into a memorandum of understanding with the Deportment of Justice in 2009 that required Oklahoma County to adequately fund and staff the jail by 2014, or face court action from the federal government to force compliance. As of October 2021, Oklahoma County had not complied with the requirements of its memorandum of understanding with the Department of Justice.

31.   The Federal Bureau of Prisons removed all federal detainees from the OCDC in 2008 because of the dangers posed by the conditions at OCDC.

32.   Numerous news and internet articles also made Defendants BOCC and Jail

Trust aware prior to October 2021 of the unreasonable conditions at the OCDC, for example:

a.    "Over the past 15 years, the 13-story jail, in Oklahoma City has had many alleged problems, from unsanitary conditions to negligent car of inmates, poor medical care, and outright abuse of inmates. A clerical worker at the jail posted a YouTube video claiming inmates had been beaten right in front of her." (BUSINESS INSIDER, The stories coming out of this Oklahoma jail are horrifying, February 25, 2015).

b.    "It is ridiculously overcrowded, although steps are being taken to rectify that situation. There have been a surprising number of deaths over the past two years in the jail. The plumbing and sewages systems are horrible – so horrible that they affect the rest of the city." (AMERICAN BAR ASSOCIATION JOURNAL, Netflix's new series 'First and Last' accurately detains many aspects of county jail life, September 20, 2018).

33.    In December 2020, under the current policies and procedures that existed at the time of October 2021, an officer was allowed to unilaterally let feuding gang members out of their cells, which led to serious assaults.

34.    In September 2021, District Attorney Prater requested a Grand Jury investigation into the jail's operations due to the ongoing and persistent issues.

35.    A February 2021 news report indicated that a detention officer was observed

on video coordinating and allowing an attack to occur between inmates, similar to what occurred in Plaintiff Murphy's attack.

36.    A September 2021 news report showed that an officer affirmatively placed an inmate into a cell despite pleas that he would be attacked if placed into that cell, similar to what occurred in Plaintiff Murphy's attack.

37.    One of the reviews identified the low level of pay for detention officers by the OCDC. This low pay, combined with the lack of training as identified by consultants leads to poor candidates and employees in charge of maintaining a safe jail.

38.    That the lack of training and failure to attract good candidates to staff the jail is one of the moving forces behind these attacks occurring and the detainee-on-detainee violence that persists due to overcrowding and under-staffing.

39.    Despite being aware of the unconstitutional conditions at the OCDC and pattern and practice amongst jailers to have unchecked access to opening inmates' cells to aid and abet inmate-on-inmate violence, Defendants BOCC and Jail Trust deliberately disregarded the substantial risk of serious harm that existed on or about October 10, 2021 to detainees/inmates, including Plaintiff, to be injured as a result of the unconstitutional conditions at the OCDC and a pattern and practice amongst jailers to assist and acquiesce in inmate-on-inmate violence with no appropriate safeguards.

40.    On or about October 10, 2021, Plaintiff and his cell mate got into a disagreement which caused Plaintiff's cell mate to signal and communicate to Defendant

Officer Dominique Thomas and inmates/detainees housed in a nearby cell.

41.     In communication and requests by verbal and non-verbal directives to Defendant Thomas and the nearby inmates/detainees indicated that he wanted them to be let into his cell in order to carry out an attack on Plaintiff, Ta'Vion Murphy.

42.     Plaintiff Murphy observed these communications and immediately became concerned for his safety and well-being.

43.     Defendant Thomas proceeded to allow access to Plaintiff by the other detainees/inmates, despite pleas from Plaintiff to not allow them into his cell

44.     Defendant Thomas then proceeded to exit the pod area to allow the attack to be carried out.

45.     Plaintiff Murphy was stabbed by a shiv nearly 30 times, which caused serious and significant injuries, including puncturing of his heart and other cuts and wounds which were the result of the nearly 30 stab wounds.

46.     As a result of the injuries, Plaintiff needed life-saving intervention which included two separate open heart surgeries. As a result of the attack on Plaintiff, an investigation confirmed Defendant Thomas' involvement and recommended criminal charges for him and the three assailants. As of date, Plaintiff has not been able to confirm that the Oklahoma County District Attorney's office has proceeded with charges and/or contacted him, as the victim, stating why charges have or have not been filed.

47.     Defendant Thomas' conduct in giving free access to open cells to accommodate

violent attacks is in accordance with the known pattern and practices of the OCDC; said practices have existed for many years at the OCDC and have been widely investigated by the DOJ and widely reported in the news. Despite these risks and prior acts of failing to protect inmates due to these known risks of unilateral access to cells, OCDC continues to implement the same policies and procedures that allowed these attacks to occur.

48.     The policies, practices and customs of Defendants Jail Trust and BOCC in allowing and encouraging jailers to have free access to inmates in cells were the moving force behind Plaintiff's injuries.

49.     Defendants BOCC and Jail Trust's deliberate indifference to the DOJ's reports warning that short staffing and overcrowding continue to lead to detainee-on-detainee violence violates all detainees' rights to be free from harm and threat, in violation of the United States Constitution.

50.     The BOCC and Jail Trust, and formerly the sheriff's office, continue to point fingers at each other stating that funding is the issue and blame the construction of the building. While they have proposed building a new county jail, they fail to propose solutions to adequately fund, train and staff the jail to alleviate detainee-on-detainee violence.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF 42 U.S.C. § 1983

51.     Plaintiff re-alleges and incorporates every allegation set forth in paragraphs 1 through 50  as if fully set forth herein.

11

52.     The Defendants Jail Trust and BOCC, individually and in concert, had knowledge of, and were deliberately indifferent to the following:

a.     The ongoing pattern and practice of constitutional violations at OCDC, which had been disclosed by various investigations and inspections before Plaintiff was attacked.

b.     The ongoing failure to implement adequate policies, guidelines and procedures to reasonably ensure the safety of detainees like Plaintiff Murphy.

c      Failures to follow the OCDC policies, guidelines and procedures when Ta'Vion Murphy was a detainee.

d.     A failure to adequately monitor and supervise access to cells from inmates by roving officers.

e.     Failures to properly segregate violent (or harmful) detainees from other detainees like Plaintiff Murphy.

f.     Failures to properly staff the OCDC.

g.     Failures to properly assign duties to the detention officers in charge of the care, custody and control of detainees.

h.     Failures to properly monitor the supervisors of the OCDC.

I.     Failures to correct known deficiencies in the OCDC's operation, policies and procedures.

j.    A failure to protect from harm, which violates the right to be free from threats and violence from other inmates.

53.    The actions of Defendants BOCC and Jail Trust created a known and substantial risk of serious harm. Under the totality of the circumstances, the Defendants' pattern of action toward detainees and inmates, including Ta'Vion Murphy, due to Defendants BOCC and Jail Trust's lack of properly trained staff and their failure to supervise, resulted in deliberate indifference to the known substantial risk of serious harm and grave injuries to Ta'Vion Murphy, which violated his constitutionally protected rights and proximately caused his injuries. The BOCC, as the final decision-makers on funding, and the Jail Trust, as final decision-makers on policies and procedures, hiring and training, combined to violate Plaintiff Murphy's constitutional rights as their decisions to under fund and under staff the jail led to hiring unqualified Jailers, like Dominique Thomas, who in turn have, on multiple occasions, made deliberate actions that harm and seriously injury inmates at OCDC as previously described. The consultants, audits and reviews described briefly in this Complaint, have warned and instructed them of these known unconstitutional deficiencies, how to correct the unconstitutional deficiencies, and explained to the Defendants how these reports lead to detainee-on-detainee violence. Known deficiencies by Defendants, and their lack of action, violates Plaintiff's, and other detainees who are still in custody under these unconstitutional conditions, known and recognized constitutional and American rights to be free from harm while under state-mandated custody and control.

13

54.   All the Defendants' acts and omissions constitute a deliberate indifference to Ta'Vion Murphy's care, custody and safekeeping. Their acts and omissions proximately caused Ta'Vion Murphy's life-threatening injuries and violated his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, which are cognizable under 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

## CRUEL AND UNUSUAL PUNISHMENT

55.   Plaintiff re-alleges and incorporates every allegation set forth in paragraphs 1 through 54 as if fully set forth herein.

56.   Plaintiff Murphy had a right under the Eighth and Fourteenth Amendments to the United States Constitution to be free from any cruel and unusual punishment as he was both a DOC inmate and County detainee while incarcerated at the OCDC. The Defendants violated Plaintiff Murphy's right under the Eighth Amendment to be free from cruel and unusual punishment by their above-described actions consisting of their deliberate indifference to his right to be free from harm and by subjecting him to conditions that caused him to be physically attacked, incurring life-threatening injuries.

57.   Mr. Murphy's constitutional right not to be subjected to cruel and unusual punishment under these circumstances was clearly established.

58.   As a direct and proximate result of Defendants' acts and/or omissions, as described herein, Defendants, herein above named, while acting under color of law, deprived

14

Mr. Murphy of his federal constitutional right in violation of the Eighth Amendment and 42 U.S.C. § 1983.

59.     As a further direct and proximate result of Defendants' acts and/or omissions, as described herein, Mr. Murphy suffered violations of his rights, privileges and immunities under the Constitution of the United States and suffered excruciating pain and suffering, all to his damage in an amount in excess of Seventy-five Thousand Dollars ($75,000.00), including medical damages.

60.     The Defendants, and each of them, have in regard to this matter exhibited a willful and deliberate disregard for the rights and safety of Mr. Murphy. Accordingly, Plaintiff is entitled to punitive damages against all of the individual Defendants in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

## PUNITIVE DAMAGES

61.     Plaintiff re-alleges and incorporates every allegation set forth in paragraphs 1 through 60  as if fully set forth herein.

62.     Plaintiff is entitled to punitive damages on his claims brought against the individual Defendants pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts and omission alleged herein constitute intentional, reckless or callous indifference to Plaintiff's constitutionally protected rights.

## DEMAND FOR JURY TRIAL

63.     Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

64.   Plaintiff reserves the right to plead further upon completion of discovery, to state additional claims and to name additional parties to this action.

## CONCLUSION

WHEREFORE, Plaintiff, Ta'Vion Murphy prays for judgment against Defendants in a sum in excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332 (currently $75,000.00) plus interest, attorneys fee, costs and all such other relief as to which Plaintiff may be entitled.

Respectfully submitted,
WALSH & FRANSEEN


s/ Derek S. Franseen
Derek S. Franseen, OBA No. 30557
200 E. 10th Street Plaza
Edmond, OK 73034
(405) 843-7600 - Telephone
(405) 606-7050 - Facsimile
dfranseen@walshlawok.com