IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TA'VION MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-525-SLP |
| ) | |
| BOARD OF TRUSTEES FOR THE ) | |
| OKLAHOMA COUNTY CRIMINAL ) | |
| JUSTICE AUTHORITY, et al., ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Plaintiff, appearing through counsel, filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his federal constitutional rights. Defendant Oklahoma County Criminal Justice Authority ("OCCJA") filed a Special Appearance and Motion to Dismiss [Doc. No. 9], to which Plaintiff responded, *see* [Doc. No. 10]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the matter was referred to Magistrate Judge Shon T. Erwin, who issued a Report and Recommendation [Doc. No. 19].

Judge Erwin recommends Plaintiff's claims be dismissed "with respect to the alleged overcrowding, short staffing, and failure to train." *Id.* at 9. The matter is currently before the Court on Plaintiff's timely Objection [Doc. No. 21], which gives rise to the Court's obligation to undertake a de novo review of those portions of the R. & R. to which Plaintiff makes specific objections.[1] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

---

[1] Defendant OCCJA did not file an Objection to the R. & R. Accordingly, the Court ADOPTS the portions of the R. & R. which (1) found the OCCJA is an entity subject to suit, and (2) recommended the Motion be denied to the extent it sought dismissal of Plaintiff's claim "that the

Upon de novo review, the Court ADOPTS the R. & R. in part and DECLINES to adopt the R. & R. in part.

## I.   Background[2]

As set forth in the Complaint, Plaintiff was incarcerated at Oklahoma County Detention Center ("OCDC") when he and his cellmate had a disagreement on October 10, 2021.  *See* [Doc. No. 1] ¶¶ 1, 40.  After the argument, Plaintiff's cellmate signaled to detention officer Dominique Thomas and to "inmates/detainees housed in a nearby cell." *Id.* ¶ 40.  Officer Thomas then allowed the other inmates to enter Plaintiff's cell.  *Id.* ¶ 43. The officer left the pod before the other inmates stabbed Plaintiff "by a shiv nearly 30 times," puncturing his heart and causing other serious injuries.  *Id.* ¶ 45.

In the roughly fourteen-month period leading up to Plaintiff's attack, three similar incidents occurred.[3]  In December 2020, a detention officer "let feuding gang members out of their cells, which led to serious assaults."  *Id.* ¶ 33.  Two months later, a "news report indicated that a detention officer was observed on video coordinating and allowing an attack to occur between inmates."  *Id.* ¶ 35.  Finally, "[a] September 2021 news report

---

OCCJA was deliberately indifferent to a custom at OCDC which allowed detention officers' access to inmates' cells and which caused [Plaintiff's] injuries." R. & R. [Doc. No. 19] at 6.

[2] The Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

[3] The OCCJA argues that Plaintiff has "provide[d] two examples of prior incidents." [Doc. No. 9] at 7.  But nothing in the Complaint indicates that the December 2020 attack and the February 2021 news report are the same incident.

showed that an officer affirmatively placed an inmate into a cell despite pleas that he would be attacked if placed into that cell . . . ." *Id.* ¶ 36.

Following his attack, Plaintiff filed suit against the OCCJA and the Board of County Commissioners for Oklahoma County, alleging a violation of his constitutional rights.[4] The Board filed an Answer [Doc. No. 5], but the OCCJA moved to dismiss the Complaint,[5] alleging (1) it is not an entity legally capable of being sued, and (2) Plaintiff failed to plead sufficient facts to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* [Doc. No. 9].

In his R. & R., Judge Erwin first concluded the OCCJA is an entity capable of being sued. He further recommended dismissal of the Complaint to the extent it alleges a constitutional deprivation based on "overcrowding, short staffing, and failure to train." [Doc. No. 19] at 9. Judge Erwin recommended the Court deny the OCCJA's motion, however, to the extent it sought dismissal of the claim of "a custom/practice of allowing detention officers' access to inmates' cells." *Id.* Plaintiff filed a timely Objection to Judge

---

[4] Plaintiff also named Officer Thomas as a defendant but has since dismissed all claims against the guard. *See* [Doc. No. 25].

[5] The Complaint includes two claims: (1) "Violations of § 1983," premised on a deprivation of Plaintiff's constitutional rights under the Fifth, Eighth, and Fourteenth Amendments, and (2) "Cruel and Unusual Punishment," alleging a deprivation of Plaintiff's rights under the Eighth and Fourteenth Amendments. Compl. [Doc. No. 1] ¶¶ 54, 56. The OCCJA sought dismissal of the Complaint in its entirety. The R. & R. likewise discusses the allegations within the § 1983 analytical framework more broadly. Accordingly, the Court considers only whether the allegations are sufficient to state a claim for the denial of a constitutional right, as actionable under § 1983. *See Brown v. Buhman*, 822 F.3d 1151, 1162 n.9 (10th Cir. 2016).

Erwin's R. & R. The Court has conducted a de novo review of the specific issues raised in the Objection. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## II. <u>Legal Standard</u>

### *a. Motion to Dismiss*

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, requires a litigant to plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When analyzing a complaint under this standard, the Court first identifies "the allegations in the complaint that are not entitled to the assumption of truth,"—i.e., legal conclusions and bare assertions. *Id.* at 679–81. It then evaluates the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. Accordingly, "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

### b. *42 U.S.C. § 1983*

Section 1983 provides that any person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Although litigants my seek relief such relief from a municipality, liability can exist "under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To establish municipal liability under § 1983, a litigant must show "(1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury." *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)). To survive at the motion-to-dismiss stage, a Complaint must include more than a formulaic recitation of these elements. Instead, it "must include factual allegations that a particular municipal custom or policy was the moving force behind the constitutional injury." *Id.* at 794 (citing cases).

### III. Analysis

As is relevant here, Plaintiff alleges the OCCJA's policy, practice, or custom of (1) overcrowding, (2) staff shortages, and (3) failure to train resulted in a deprivation of his constitutional rights. Judge Erwin recommends dismissal of this portion of Plaintiff's claim on the basis that Plaintiff "failed to properly plead [1] the existence of a policy; [2]

5

a direct causal link between the policy and Plaintiff's injuries; and/or [3] that the OCCJA acted with the requisite deliberate indifference regarding Plaintiff's allegations that his injuries were the result of overcrowding, staff shortages, and a failure to train." [Doc. No. 19] at 12.

### a. *Overcrowding & Understaffing*

The Court agrees Plaintiff has failed to state a cognizable § 1983 claim with respect to overcrowding and staff shortages. In his Objection, Plaintiff refers back to several paragraphs of the Complaint. *See* [Doc. No. 21] at 4. Upon review, however, the allegations about overcrowding and understaffing are generic and largely conclusory. *See, e.g.*, [Doc. No. 1] ¶ 21 ("The shortage of staff at the jail has contributed to a lack of control over the prisoners at the OCDC."); *id.* ¶ 25 (citing report's finding that "[s]taff consensus is that 'every issue that transpires in the jail can be traced to staff shortages'").

Even assuming the existence of a policy, the Complaint includes no factual allegations which would permit the inference that overcrowding or understaffing caused the constitutional deprivation in this case. *See City of Canton*, 489 U.S. at 385 ("[The] first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."). In his Objection, Plaintiff claims overcrowding "result[ed] in a deprivation of safe housing for inmates" and understaffing "result[ed] in an increase of inmate on inmate violence." [Doc. No. 21] at 4. Plaintiff then contends that because "he was a victim of inmate on inmate violence and a lack of safe housing, [he] has also alleged that these

policies or customs were the cause of his injuries." *Id.* These high-level generalizations are insufficient to link either policy to Plaintiff's injury.

Although Plaintiff includes several facts about overcrowding at OCDC generally, he fails to tether any of those allegations to his injury. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Similarly, there are no facts linking the OCDC's understaffing to Plaintiff's constitutional injury; Plaintiff instead alleges Officer Thomas was present immediately before he was stabbed. *See* [Doc. No. 1] ¶¶ 40–44; *cf. Altstatt v. Bd. of Cnty. Commissioners for Oklahoma Cnty.*, No. CIV-22-811-D, 2023 WL 6130618, at *7 (W.D. Okla. Sept. 19, 2023) (reaching opposite conclusion where inmate alleged understaffing caused his "report of a threat to go unaddressed, his housing pod to be unmanned, his cellmate's attack to continue unabated, and intervention by officers to be delayed"). Because the Complaint does not include any non-conclusory factual allegations linking overcrowding or understaffing at OCDC to Plaintiff's alleged constitutional deprivation, the Court ADOPTS the R. & R. to the extent it recommends dismissal of this portion of the Complaint.

### b. *Failure to Train*

Conversely, the Court finds that Plaintiff has stated a § 1983 claim to the extent he alleges a failure to properly train officers. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But to proceed under this theory, "a

municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton*, 489 U.S. at 388). "To satisfy the stringent deliberate indifference standard, [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (quotation omitted) (alteration in original).

To support this claim, Plaintiff's Complaint relies on a 2008 report from the Department of Justice ("DOJ"), a 2012 DOJ report, a 2009 memorandum of understanding ("MOU") between the DOJ and the County, a report from consultant hired by the OCCJA, and a May 2021 report from the National Institute of Corrections ("NIC"). *See* [Doc. No. 1] ¶¶ 14–30. The R. & R. recommends dismissal, reasoning that the 2008 DOJ Report, 2009 MOU, and 2012 DOJ Report "are too remote in time to the events which allegedly occurred in 2021," [Doc. No. 19] at 10, and the allegations in the 2021 NIC report and the consultant's report "are too conclusory to state a claim for relief and do not properly plead the element of causation which is required for municipal liability." *Id.*

The Objection first argues the reports are "critical" to Plaintiff's claims and then contends Plaintiff has pled sufficient facts to state a claim under a failure-to-train theory. [Doc. No. 21] at 3. The Court need not determine whether and to what extent the reports may be used to support Plaintiff's claims. Instead, the Court is satisfied that Plaintiff has included sufficient allegations to state a failure-to-train claim in light of the facts regarding similar incidents that occurred in the fourteen months leading up his stabbing.

The Complaint includes allegations about three other instances in which OCDC guards allowed inmates to leave their cells. *See* [Doc. No. 1] ¶¶ 33, 35–36. And in all three of these instances, those inmates then immediately engaged in violence against other inmates. Based upon this pattern of similar constitutional deprivations, the Complaint has stated a claim that the OCCJA acted with deliberate indifference toward a known risk that OCDC guards would continue to engage in such unconstitutional conduct. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997) ("[Municipal decisionmakers'] continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability."). Accordingly, the Complaint has plausibly stated a failure-to-train claim.[6] *Cf. Parkerson v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, No. CIV-22-607-PRW, 2023 WL 4932094, at *2 (W.D. Okla. Aug. 2, 2023) (reaching same conclusion on nearly identical allegations). Thus, the Court DECLINES to adopt the portion of the R. & R. that conflicts with this conclusion.

---

[6] The Motion to Dismiss primarily attempts to factually distinguish the previous attacks from Plaintiff's. *See* [Doc. No. 9] at 7 (noting that officer involved in first two instances was terminated and "criminally charged for his conduct," and claiming the third instance "is vague and unconfirmable"). But at the motion-to-dismiss stage, the proper inquiry examines the sufficiency of the allegations *in the Complaint*. *See Nard v. City of Oklahoma City*, 153 F. App'x 529, 534 n.4 (10th Cir. 2005) ("Because the district court considered facts outside of the complaint, however, it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)."). The Court declines to consider extraneous facts at this stage of the litigation and expresses no opinion as to what impact, if any, they may have on a more developed record.

### IV. <u>**Conclusion**</u>

IT IS THEREFORE ORDERED that the Court ADOPTS the R. & R. to the extent it:

- Finds the OCCJA is an entity subject to suit,

- Finds that Plaintiff has failed to state a § 1983 claim premised on a policy of overcrowding and/or understaffing, and

- Finds that Plaintiff has stated a § 1983 claim premised on the OCCJA's deliberate indifference to an OCDC custom which gave detention officers access to inmates' cells.

IT IS FURTHER ORDERED that the Court DECLINES to adopt the R. &. R. to the extent it recommends dismissal of the portion of Plaintiff's § 1983 claim premised on a failure to train.

IT IS FURTHER ORDERED that the Motion to Dismiss [Doc. No. 9] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 2nd day of October, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE